Can I please the Court? My name is Edward Himmelfarb with the Department of Justice. I represent two Secret Service agents on the President's security detail who have taken this qualified immunity appeal. Can I just start off with this? We're reviewing this on a 12b-6 appeal. We have to take as true the facts as pled. Do you agree with that? I agree with that entirely. Under the circumstances, how could we fail to find that there wasn't viewpoint discrimination? They're alleging that your clients intentionally or pursuant to instructions treated the protesters differently because of their viewpoint than those who were supportive of President Bush. They allowed the supporters to be close enough to be a danger, if that's what the reason for the removal of the other clients were. Isn't that almost a straightforward case of viewpoint discrimination? Again, because we have to take the facts pled as true. There are two things to say about that, Your Honor. The first thing is that the allegations of the complaint themselves, including the map, which the plaintiffs have helpfully included in there, and we've reproduced it in a slightly enlarged version of page six of our blue brief, it shows that there's a distinction. In order to have viewpoint discrimination, you have to treat similarly situated people differently. What happened here is, as you can tell from the map, these people are not similarly situated. The Bush supporters are. Wait a minute. Similar, though. Similar, not similar in what respect? I mean, similar. I think the plaintiff's case is similar in terms of the reasons offered as to the need for protection, right? Well, you're saying they're not similar in that respect? No, they're not at all, Your Honor, because the Bush supporters who are located, as the map shows you, they're located to the west side. What about the diners right in there with them? I beg your pardon? What about the other diners right in the patio with them? That's right. There are two responses on the diners point. The one is. Well, they're closer than the demonstrators. That's correct, Your Honor. But there's no allegation in the amended complaint at all that says anything about the viewpoint of any of the diners. The diners were all treated neutrally. Also, so we assume. So we assume from that their viewpoint was neutral, which is different from the anti-Bush viewpoint by definition of the anti-Bush demonstrators. Yes, Your Honor. But that's true. But this court in Menotti held that that was not viewpoint discrimination. If you look at the portions of Menotti that we cite in our brief, I believe it's page 1130 in the footnote there, most of Menotti, of course, is dealing with content discrimination, but there's a segment of it that deals with viewpoint discrimination, and it says that allowing shoppers and people having business with the businesses within that restricted area in downtown Seattle to come in there did not create a viewpoint discrimination because it was not discriminating based on anybody's viewpoint. Those people had neutral viewpoints? Also, your argument is that patrons at a particular establishment are not the same as protesters outside. Well, that's right. They're different. Much in the same way as employees of the hotel weren't moved either. Well, that's true also, Your Honor. That's correct. But getting back to the people outside for a moment, again, because we have to take the allegations of the complaint as true, they're saying that the protesters, those who were against President Bush, were moved substantial distances away because of their anti-Bush protest and because they felt they represented a danger, and yet those who were pro-President Bush and they viewed apparently not constituting a danger were allowed to be close by. Isn't that what we have to assume? No, no. Understanding the map. No, I don't think so, Your Honor. Okay. Because let me take the second response, which I get to. I said before there were two responses. One, the first one being that if you just look at the allegations, if you look at the map here, page 6 of our blue brief, you can see why they were treated differently. But let's go to the second response. Oh, no. I can't see that. I don't agree. But, Your Honor, let me go through it then. I'm sorry, Your Honor. Well, actually, let me just put the point out. What he's saying is that the anti-Bush supporters were right in front of the hotel. The pro-Bush supporters were a block away. What happened, in effect, was that the anti-Bush supporters were moved the exact amount of distance away that the pro-Bush supporters were. So you're saying that it wasn't – I mean, if anything, it put them precisely at the same spot, in reference to each other. In fact, probably the anti-Bush supporters and anti-Bush protesters would have been actually closer to the patio area than the pro-Bush supporters. Slightly closer. They were later moved farther. They were moved further away, and they were surrounded. No. That's not correct. That's later on, Your Honor. Well, later on is still part of the incident. But they were moved further away, and they were surrounded. Look at your own map, and you see the Bush supporters on the north side of California Street. Some of them were just as close or closer than the protesters across the street, according to your map, right? No, I don't think so, Your Honor. First, it's the plaintiff's map. It's not our map. But second – Well, you're relying on it. Can you believe it? We certainly are. So we have to accept this as true. We do. All right. Then the Bush supporters – Right. The Bush supporters at the southeast corner of 3rd and California are just as close as the protesters that are across California Street. Do you agree with that? If you get a ruler and measure it, wouldn't it be just as close? I don't believe so. You mean the people on the northeast corner of 3rd and California and the southwest and southeast? The people – the Bush supporters on the southeast corner, right, of the intersection of 3rd and California. You see that? The Bush supporters are on the west of 3rd Street. I know that. Okay. But the furthest east of those people – Yes. Right? That's right. Right on 3rd Street, right? Yes. The Bush supporters at the corner of 3rd and California, those people are just as close to the Jacksonville Inn as the protesters who are across California Street from the Jacksonville Inn. Look at the map. Your Honor, the Secret Service, according to the complaint, the Secret Service set up a – moved everybody from the block itself. And, in fact, the – what the police chief of Jacksonville said, they – We can't consider that, can we, for purposes of this motion? We can't consider anything other than what's in the – I understand that. But we are saying that the court should take jurisdiction over that. I appreciate that, Your Honor. Yes. But there's no reason – the Secret Service is not required to create a circle around where the President is. There could be some people who are slightly closer than other people who are in the zone, outside the zone. Otherwise – Isn't your argument – Let me stop you. Isn't your argument the fact that all that Savage would ask them to do was to clear the persons in front of the particular block, in front of Jacksonville Inn? Isn't that correct? And so they didn't know exactly where they were going to be moved to, but the part was to move them to the – between 4th and 5th Street on California Street, as opposed to being between 3rd and 4th. That's right. That's where they were moved. That's according to the complaint. That's where they moved. Yes. The second thing – if I may, I'd like to get back to the second point I was trying to make earlier. The second point is that when the Supreme Court decided to develop antitrust promptly last year, it put a new requirement on the courts. Are you asking for – we find that there would be a heightened standard of pleading for purposes of qualified immunity? No, no, no, Your Honor. We're not claiming that – promptly does not create heightened pleading. What it does is something different. There are two aspects, and the Seventh Circuit said this and actually promptly itself says this. There are two aspects of this. One is no displeading and the other is plausibility. Those are two independent requirements. We're talking about plausibility here, Your Honor. So you're arguing that it's not plausible to believe, taking the pleading as we have it, that the officers moved the protesters away because of viewpoint discrimination. Is that what you're saying? We're saying that precisely, Your Honor. Because what they've done – to me, that's not a very plausible argument. I beg your pardon? It's not a very plausible argument. What's not a plausible argument? The argument you're making. I mean, you're just ridiculing the plaintiff's allegation. He's saying that your plausibility argument is not plausible. I beg your pardon? He's saying that your plausibility argument is not plausible. I think I finally understood that, Your Honor. Here's the thing, Your Honor. If you look at Twombly, Twombly deals with an antitrust case. There are a lot of allegations of parallel behavior. And the allegations are up to about this level. The legal conclusion that they wanted to reach was that there was conspiracy. There's a gap there. There's no plausibility. Isn't the plausibility aspect that you're arguing the fact that the movement would not have done that which purportedly your clients are being accused of? In other words, the noises and the protests that they were making could as easily be heard or to the spot where they were moved to. And so, therefore, if their whole purpose was to prevent the President and the diners from hearing the anti-Bush messages, it was not plausible that that was the intent because it would not have had that effect. That's your argument, isn't it? Well, that's one part of it. That is true, Your Honor, but it's actually more than that because there are no specific allegations in there that link anything to viewpoint discrimination. For example, I'll give you an example of what would satisfy viewpoint discrimination. What about the accusations or the allegations that that is the policy of the Secret Service, even though, I mean, that's a hidden policy of the Secret Service? That's in the complaint, isn't it? Let's take a look at those, Your Honor, because we have to take the allegations of the complaint. It's true. Let's look at those allegations. If you look at allegations, paragraphs 57 to 60 of the amended complaint, those are the key allegations. I would say 57 and. To 60. Go ahead. The page number in the, in the. 57 to 60. It's, let's see, 148 to 149 of the excerpts of record. Okay. Now, what it says in there is it refers back to paragraph 3 of the complaint.  It distinguishes two aspects of this case, one of which is not relevant on this appeal. Paragraph 3, which it references, is for equitable relief. They're claiming that there's a secret policy that shows that in previous cases where something happened, it's continuing to happen. That was dismissed from this case. It's not on appeal. They're not, they can't appeal that. It's not finalized. When you say that was dismissed, you mean the claim for injunctive relief. That's right. Right. Injunctive relief was dismissed for lack of standing in district court. That's not on appeal. The allegation of damages, which are not, is not referenced in 57 to 60, is paragraph 4. So these allegations are not relevant to the individual damage actions against the two Secret Service agents. And so the fact that, or the allegation that there was a secret policy is not relevant here to the question of whether these two specific Secret Service agents, given what they are alleged to have done here. I would say because the claim for injunctive relief was dismissed, that the incorporation by reference of paragraph 3 into paragraph 57 is an invalid incorporation. No, I'm not saying. Do we have to disregard those allegations? No. Well, Your Honor, you don't disregard them. But for this purpose, you don't pay attention to them because those are specific. What's the difference between not paying attention and disregarding them? Because what you're talking about here, Your Honor, is whether these damage acts this First Amendment damage action against two Secret Service agents, whether these are related to that, related to those allegations. They're not related to that. They're validly part of the complaint, but they're not related to this particular claim against these particular defendants for this particular sort of relief or damages. Well, they are by the incorporation into paragraph 57. That's my point. You're saying we have to disregard the incorporation. Well, you're saying that paragraph 4, which is the damages section, which is relevant to this, is not incorporated. It's not incorporated. That's not incorporated. Yes, that's correct. In other words, let me rephrase it. These paragraphs 57 to 60 do not relate to the damage action. They relate to the injunctive request for injunctive relief. And that's why we don't. And because the injunction was dismissed, you're saying that it's an imperfect cause of action, basically, on this point. I know. But why do you say they relate only to injunctive relief? Because, you know, the injuries that fall right after that, 61 and 62, I mean, they all refer to the same thing, compensable injuries and irreparable injuries. So I don't understand why you say that. Well, that's different, Your Honor. We're talking about 57 to 60. And the reason those allegations are there is to create this argument that this case is just like the previous one. Are you saying that a plaintiff who sues only for monetary damages can't rely on a pattern and practice theory? Oh, that they make specific allegations with respect to the specific. There's no allegation in this complaint that these particular defendants. Well, they incorporated here, you know, as you say, in paragraph 57. But that's not an allegation against these defendants for purposes of this First Amendment claim. It's an allegation against the secrecy of this. Can't we infer it? I beg your pardon? Can't we infer it in under 12b-6? Aren't we supposed to infer it? No, Your Honor. No, you're not. Actually, and that goes back to Twombly. My Twombly argument is that you have to have specific. Well, did you make this argument to the district court? Oh, absolutely. Okay. And what did the district court do with this part of your argument? The district court, and we're talking about the magistrate judge here, because district court. Right. Well, the recommendation. The magistrate judge says we're talking about at a general level, this is generally alleging viewpoint discrimination, which at a general level is clearly established. And for purposes of qualified immunity, you have to look at a much more specific the district court said over and over again, you have to look at specific fact situations. But you are saying that Twombly is the you're talking about the heightened pleading requirement at Twombly, then. It's not heightened pleading, Your Honor, with all respect. It's plausibility. No, they sort of go together. It's plausibility. Twombly says we're not talking about heightened pleading. We're talking about plausibility. Yes, that part of it, the plausibility part of it is very important here when you're in the first step of the qualified immunity analysis, whether a claim has been stated, a constitutional claim has been stated at all. And later on, of course, the second question is, was it clearly established? Let's see what let's do. We're going to give you your full three minutes. Because of our conversation here, we've gone well into the time, but it's important that we hear your argument. Let's now hear from Mr. Wilker, and then we'll come back to your three minutes of rebuttal, Mr. Hemelfarb. Mr. Wilker. May it please the Court. Stephen Wilker for the plaintiffs, the appellees in this matter. I think the Court, in the initial questions that Your Honors have asked, have come right to the heart of this. This is a case on 12b-6. This is a pleading motion at its heart. There are some issues on summary judgment, which I think we have addressed in the briefs, and I'm happy to answer those questions as well. But what we have here is a motion against a pleading. And every inference, all reasonable inferences have to be drawn in our favor. You really have to address it. I think it's a plausibility argument. And his, you know, argument that your attempt to incorporate paragraph 3, it doesn't fly because it really doesn't. It's not incorporated against, you know, these two defendants on the damage claim. So the pleading is insufficient, and besides being implausible. Let me start with the second issue first, because I think that's an improper analytical approach when you try and, when counsel tries to parse the claim and say you can only rely on this allegation with respect to this particular element or claim or request for relief. What we're talking about are the factual allegations that are in the complaint and the inferences you can draw from those. And one of the inferences you can legitimately and reasonably draw from the allegations in the complaint is that the Secret Service had a sham policy and that the actual policy was, in fact, to encourage and foster discrimination on the basis of viewpoint. Let me stop you, however. The only paragraph that I see which specifically references Wood and Savage is 50. Am I wrong on that? What else have you alleged against them other than what is contained in paragraph 50? We've alleged that I think a fair inference. I can't. So there's pretty much nothing. So if you look at what is stated in paragraph 50, all that is said is that Wood and Savage made a request of Defendant Tao and the other police defendants to move the persons from between 3rd and 4th Streets on California and moved them to the east side of 4th Street. In other words, moved them a block. That's basically your contention. Well, that's not quite our contention. Well, but that's the only thing that's stated. Well, our contention is that they acted in accordance with the unofficial sham, excuse me, the unofficial but actual policy of the Secret Service in moving these demonstrators away from the President's earshot. Well, they didn't. They obviously didn't move them away from the President's earshot because you're saying that the pro-Bush supporters who are the exact distance, the same distance away than the anti-Bush protestors would have been if they had been moved to between 4th and 5th Streets. I mean, it's the same distance. So therefore, in fact, they're actually closer to the patio and they're actually on the other side of the patio, which is more directly in line, you know, audibly. So I don't understand the – that's the plausibility argument that you have. Well, the plausibility argument is truly a factual argument. And the elevation – what counsel is asking for and what the government is asking for here is, in fact, heightened pleading. Because what they're asking us to do is not simply plead a direct violation of our client's constitutional rights, but they're asking us to discount any possibility that the Secret Service agents at issue had a neutral view. No, they're simply asking us to do what was found in Bell Atlantic, which is if the even for purposes of 12b6. Well, I'd suggest to the Court that it's not implausible to believe when we've cited instances of prior conduct by the Secret Service and we've offered those information to the Court, it's not implausible. But that's not what you've pled specifically here. You've pled that he was – ordered these protestors to be moved one block. Well, let me ask you this question, Mr. Walker. Well, you know, assuming these allegations had been rigorously produced, pursued in the district court, and the magistrate judge had given some credence to the allegations, could you have amended your complaint? I think we could have. I mean, I think we could have amended our complaint. One of the things we have to address here is this complaint was drafted and tested before Bell Atlantic v. Twombly. The argument – the argument in this case occurred before that decision came down. When that decision came down, the parties submitted supplemental briefs to the – to Magistrate Judge Clark. And then again, those arguments were made to Judge Panner on review of Magistrate Judge Clark's decision. So there is a context here in which we're talking about a pleading, we're talking about a complaint that's been tested for the first time.  So there is an issue which is, if the court believes there is some deficiency in this amended complaint, we fervently believe we have – we should be entitled to replete our allegations to try and meet, if there is a heightened standard under Bell Atlantic v. Twombly, we ought to be entitled to it. So you're saying that, arguendo, if this – if your argument did not succeed, that you ought to have the right before the district court to amend the pleading and to better comply with Twombly as alleged by the government. Is that right? That is correct, Your Honor. Can I address a question that Judge Wu raised? According to what he indicated, paragraph 50 is the only paragraph of the complaint that specifically refers to the two Secret Service officers that are appealing this alleged sham policy of the Secret Service, does it? That's what I am looking for, Your Honor, and I apologize. But I believe that our allegations – if you're looking at the – it's page 140. What I'm looking for specifically is, is there – again, we have to construe this with all the emphases in your favor, but are there allegations in the complaint that tie these two people to the Secret Service's alleged, if you will, conspiracy sham policy to take violent protesters, loud protesters, and move them away based upon viewpoint discrimination? And standing here before you, I can't point you to chapter and verse, but I believe that is a fair inference from the pleading and is something we are prepared to plead if given the opportunity to amend. Because we do, in fact, assert and believe that these agents were acting according to that actual policy permitting and encouraging viewpoint discrimination in this context. But you – it sounds like you are, if not admitting it, you're saying it may be possible that the pleading in this case does not specifically tie those two people to the alleged policy. Is that right? Well, I think it does in this sense. And in the allegations of damage under – on page 152 of the excerpts of record in paragraph 77, we talk about the actions of the individual Secret Service agents giving rise to the – excuse me, 77 and 78. 78 says, The individual Secret Service defendants except defendants all have been acted willfully and maliciously or with indifference or reckless indifference to class members' rights or safety. Well, as far as safety is concerned, they didn't direct how the protesters were supposed to be moved, did they? Well, and that claim is not before the Court at this time. Okay. And we acknowledge that. I'm just pointing out what the allegation of the complaint is. The complaint didn't parse out the allegations into the matters that are now pending before this Court because of the rules of the collateral audit doctrine and what is in fact properly before this Court at this time. Do you have any authority for the proposition that if – arguendo – if we were to agree with the two agents at this point and it were sent back down to the district court, that you would have the authority to amend your complaint, bring them back in and more carefully plead it with respect to the overall conspiracy? I think that's right in Rule 12. Rule 12. Okay. So you're saying that it's such a well-known point that there's nothing to talk about. And Rule 15. Hopefully I'm not misremembering the rule, which is that leave to amend shall be freely granted and liberally amended. Even after an appeal on the basis of qualified immunity. If the appeal – but the appeal here is on the basis of what's in the complaint. It's on the sufficiency of the complaint itself. It's not on – at least with respect to this issue, it's not on the substance. It's on what's flat. And the response to that is we ought to be given an opportunity. If there are defects in the opinion, particularly in the circumstance where it appears that if the Court believes that Bell, Lantigby, Twombly creates a new rubric or prism with which – through which to look at this, that it would be frankly unjust and unfair not to be given the opportunity to meet the requirements of that test. So I guess obviously there's not going to be anything post-Twombly. It's too early. But is there any authority that you are aware of where a court of appeal has found that – not these people, but other defendants were entitled to qualified immunity. It's gone back down to the trial court. The trial court has permitted, based upon the general rules of Rule 12b-6 and Rule 15 and so on, the plaintiffs to re-plead the issue and bring them back in with more exact pleading. I am not aware of a specific authority standing here before you in that particular circumstance. But I would suggest to you if there is a defect here, and I don't think there is, but if there is a defect in the pleading here, it's a pleading defect, and the ordinary rules of civil procedure ought to govern and give us an opportunity to correct and to re-plead. But you admit this is a little bit of a touchy area because these folks have gone – they're saying, hey, you know, we're just doing our duty here. We're not doing anything that's unconstitutional here. You, of course, are pleading to the contrary. And ultimately, a trier of fact is going to have to determine that unless they get out in the meantime. But if you take your point, then you usually ultimately get to the point, well, how many times could you do that? Could you go up to the court of appeal several times and claim that they're entitled to qualified immunity and go back and forth on the amended pleading? I think that's true in any case, Your Honor, in which a district court dismisses a case on Rule 12b-6 and it goes up on appeal. Right. The court of this Court, whether if it's in this circuit, always has the authority to say it's a pleading defect and either you should. Now, sometimes people stand on their pleading. Sometimes – Could an argument be made that because if we were to decide this case on a Bell Atlantic type of analysis, if your client wasn't pleading under a Bell analysis type of standard and so therefore they should be given the opportunity to do so? Absolutely, Your Honor. I mean, and we make that point in the footnote in our brief. But we also suggest – we think that the – we think we survive under Bell Atlantic v. Twombly. We think the pleading is sufficient, giving us the benefit of all reasonable inferences. But if it's not, and that's because it's a new standard, and whether Mr. Himmelfarb describes it as a sea change or a major – and we describe it as a recalibration of the standard, if it creates a new standard of pleading that wasn't in place when we had the – when this complaint was put in place, we ought to be given an opportunity to address that issue, particularly in light of the early stage of the case. I mean, the case is old, but the case is not old in terms of what's occurred in it. So can I ask, is anything going on in the district court, or did Judge Panner stay everything pending this appeal? Judge Clark issued an order, and I hope I state this right. He issued an order last December when the Federal defendants took the appeal, that he would stay the proceedings pending resolution of this appeal on the condition that we seek expedition, which we did. The court granted. So the case is pending. I believe we have a status report due to Judge Clark in the next few weeks just saying what's going on in this case. Has any discovery been done at all? The only discovery that's been done is some paper discovery with the State and local defendants. The Federal defendants have refused our request for discovery and not responded and then asked for a stay, and that stay was granted. And so that's the posture. We're still at a pleading stage in this case. And, frankly, the only reason we're here is because of qualified immunity in the collateral order doctrine under Mitchell v. Forsythe gives the Federal defendants the right to come up and appeal this determination, even on a motion to dismiss. And we know that under the rules that if we win and we go back and we go through summary judgment and the district court says you get to go to trial, they get to come back up here again, and we'll likely have that argument again. Let me ask you a question about policy. In other words, we have obviously Secret Service. They do a very important function. And if we're going to be saying that to move protesters one block, you know, ostensibly for what could be just simply a safety access issue, would subject Secret Service agents to, you know, Bivens actions. Don't you think it's a dangerous sort of policy or viewpoint to adopt? Respectfully, Your Honor, I think it's a greater danger to our country when we don't permit the resolution of an important claim of viewpoint discrimination on the basis of an assertion by the Secret Service agent of a different reason. Well, one president was shot outside of a hotel, wasn't he? I'm sorry? One president was shot outside a hotel. I understand that. But Secret Service, but presidential security is not an exception to the First Amendment. And we have a robust, and what makes the First Amendment. But it is part of the consideration. There may be, may well ultimately be part of a consideration down the road, but on a feeding basis is not an appropriate consideration. And there is decisions, and we've cited some of the decisions regarding presidential security is not an exception to the First Amendment. The First Amendment, this is a core part of our, of our. I understand that. And it's as important a right as citizens have. And it's how we address the peaceful transition of power when we have protesters and a presidential election as we're going through again now, four years later, it's the same circumstance. Very good. Thank you very much for your argument. We'll now hear from Mr. Himmelfarb, rebuttal, three minutes. Mr. Himmelfarb, can I just start with a question for you? You heard Mr. Wilker's argument about pleading. His view is that under the rules, particularly given the, if you will, the novelty of Falmey, that in the event you are successful in this appeal, that he ought to have an opportunity to amend the complaint at the trial court level. Do you agree with that? No, Your Honor. I mean, we're, this is a qualified immunity case. If you agree with our position, they're entitled to qualified immunity and they're out. But I could add another thing about it. If the Court is at all concerned about it, it's all the more reason for the Court to consider its jurisdiction on the summary judgment aspect. And if you'll, I mean, we explain. I think the problem is it's very difficult for us when your client took the position that they're not going to engage in any discovery that goes toward the factual issues. That more or less precludes us from doing that, isn't it? Well, Your Honor, if I may address that, Your Honor, in district court, the plaintiffs filed a, Mr. Wilker filed a 56-F motion. This Court's rules and the rules of every circuit that I'm aware of require some specificity in the 56-F motion. What do you want to accomplish with your discovery? What are you looking for? What do you think you're going to get and how are you going to get it? I think it's obvious what he was looking for. But he didn't say that. He said, well, we just want to test the allegations. We want to test their position, what they say. That's clearly not enough, Your Honor. And I would also say that when there was a hearing about this, Mr. Wilker said, I don't know what we're going to get out of discovery. And that in itself is enough for the Court to say, you know what? We can't force these agents to go through discovery. We can't force government officials to go through this. That's the whole purpose of qualified immunity. But how can this – I mean, this is – there's a special statute that deals with an interlocutory appeal for qualified immunity. But how can the issue of whether Agent Wood lacked a role in establishing security perimeter or Agent Savage ordered the security perimeter without regard to viewpoint be on appeal now? I mean, that trial court has not even had a chance to do anything with respect to that. The trial court deferred it. Your Honor, with all respect, the trial court did have a chance to do it. It failed to do it. It refused to decide the summary judgment. But that's not an appealable issue. It is, Your Honor. Six circuits have said that it's appealable. We've cited all of those cases. Any of our cases allow that? This Court reserved the issue in a case about 10 years ago. I don't remember the name. Marks, I believe it's called. So this Court has reserved the issue. But remember, Your Honor, this case is already before the Court. There's no question about jurisdiction on the motion to dismiss. So we're not asking the Court to review a nonexistent order. There's an order here. It simply refuses to decide. But that's a separate issue from the qualified immunity issue, is it not? Well, it's a predecessor to reaching qualified immunity on summary judgment. The Court obviously has to find that it has jurisdiction to do that. I just – I mean, I just – I'd love to be able to understand this a little bit better, but I just don't get it. I don't see how we have jurisdiction to decide that second issue. I – it's not an – it's just not a state of pleading or based on any statute that gives us jurisdiction to do that. Your Honor, the statute is 1290. It's a standard statute for final appeals. And collateral order appeals come under the statute for final judgments. But what's the final – what's the collateral order here? Collateral order is the same – the same order. But I mean, what did the Court order? It didn't make any decision on it. That's right, Your Honor. But if you look at the Fifth Circuit's case, I believe it's called Helton. I don't want to say that. The Fifth Circuit's case from one of the earliest cases on jurisdiction, it goes through point by point under the collateral order doctrine, and it explains why the refusal or failure to adjudicate this qualified immunity issue is a collateral order that's reviewable. So your position is that the Court's decision not to make a decision at that point constitutes a reviewable collateral order by this Court? That's correct, Your Honor. That's our position. But that order, the answer to that question would always be there's a factual issue and dispute, a material factual issue and dispute. No, it's not – it's actually not a dispute over factual issues, Your Honor. It's a question of whether – there's no – there's no response. If you look at the summary judgment papers below, there's no response to – there are no dispute and material issues of disputed fact. This Court has actually held that the question of materiality, even if there is a disputed issue of fact, the question of materiality is appealable despite Johnson v. Jones. It's considered an issue of law, not an issue of fact. It's appealable. Well, thank you, Mr. O'Connell. Let me just say, I think your argument would have said a lot better if you hadn't completely stonewalled on discovery that the plaintiffs wanted. Your Honor. That's all – that's all I'm saying. Okay. With all respect, that's the – qualified immunity is not supposed to – we're not supposed to engage in discovery. Well, and that's the reason we can't review disputed issues of fact on a qualified immunity appeal. But, Your Honor, as we've explained, there are no disputed issues of fact. You're entitled to stand on your – you know, review the grand discovery, but then that means we can't review, you know, the district court's declination to rule on the summary judgment motion. That's all. Well, Mr. Himmelfarb, Mr. Wilker, we thank you for your spirited advocacy. This is an important issue, an important case, and we're glad that you're out here to argue. It's been very helpful to us in our consideration of the case.  Thank you, Your Honor.
judges: Tashima, Smith, Wu